## Hecker *et al. versus* Sterling *et al.*

Where the title of a plaintiff in ejectment depends on the true location of a county line, the court is not bound to define that line by a critical interpretation of the law fixing it, without reference to the actual public interpretation which it has received during three-quarters of a century; but that is to be recognised as the true county line, where it has generally been understood to be.

For the purpose of determining such a county line, the public practice is to be looked to, in connexion with the levying of taxes, selecting jurors, serving process, official surveys, and such like matters.

The definition of a county line is a matter of public law, and as such must be interpreted by the court, but the jury alone can find the facts that give it a practical application in an action of ejectment.

ERROR to the Common Pleas of *Somerset county.*

This was an ejectment brought by Mark Sterling, James R. Hendrickson, William B. Curry, and William Larimer, Jr., against Henry Hecker, for a tract of 400 acres of land in Lower Turkeyfoot township, Somerset county. Isaac Hugus was subsequently added as a party defendant.

The plaintiffs claimed title under various sales by the sheriff and treasurer of Fayette county; the defendants by adverse possession; they also alleged that the land lay in Somerset county, and consequently, that no title passed by the sales which constituted the plaintiffs' title.

On the 26th February 1773, the county of Westmoreland was erected out of part of Bedford county, with the following division line between the two counties: "Beginning on the province line, where the most westerly branch, commonly called the South, or Great Branch of Youghiogeny river crosses the same; thence down the easterly side of said branch and river to the Laurel Hill; thence along the ridge of the said hill, north-eastward, so far as it can be traced, or till it runs into the Alleghony hill:" 1 *Sm. Laws* 407. On the 22d September 1783, Fayette county was erected; 2 *Id.* 81; on the 17th February 1784, an act was passed annexing a portion of Westmoreland county to Fayette, in which the same line was recognised; *Id.* 88; and on 17th April 1795, when Somerset county was erected out of part of Bedford county, this line became its western boundary: 3 *Id.* 229.

On the 4th February 1794, while Somerset county was a part of Bedford, a warrant was issued for the land in dispute, in the name of Samuel Painter, in which it was described as lying in the county of Fayette; and the surveyor who located the warrant returned it as lying in Fayette county, where it was taxed from that period.

[Hecker *et al. v.* Sterling *et al.*]

On the 17th April 1844, an act was passed appointing commissioners for the purpose of ascertaining the line between the counties of Fayette and Somerset (*P. L.* 288); these commissioners fixed the line between the two counties, without reference to the line of 1773, of the existence of which they appeared to be ignorant; they made the line according to their own judgments, and occasionally varied it to suit the wishes of persons residing along the route. By the line so fixed the premises in dispute were thrown into Somerset county.

On the trial, the defendants' counsel presented the following points upon which they requested the court to charge the jury:—

1. That if they believe the land in dispute lies in Somerset county, then the title of plaintiff having originated in Fayette county by judicial and treasurers' sales, the plaintiff cannot recover.

2. The best evidence of the county line is the record evidence and actual location on the ground, and evidence contradictory of the record is not to be considered by the jury.

3. The commissioners in pursuance of Act of Assembly, authorizing commissioners to ascertain the county line, did not create a new line; and hence, if the Painter tract lies in Somerset county now, the plaintiff cannot recover.

4. If the jury believe that the ridge of Laurel Hill lies west of the Painter survey, then the survey of the commissioners did not change the county line, and the Painter tract, being east of the line, lay in Somerset county, and the plaintiff, therefore, cannot recover.

5. If the commissioners changed the line, then they exceeded their authority, and the line exists as originally; and if originally in Fayette, it is still in Fayette, and therefore the plaintiff cannot recover.

The court below (KIMMELL, P. J.) delivered the following charge to the jury:—

" The plaintiffs claim the land in dispute, by the following title: Warrant to Samuel Painter, 4th February 1794, survey 12th November 1794, made by Alexander McLean, deputy-surveyor, for 400 acres. The purchase-money was paid by James Wilson. Judgments were obtained against James Wilson; and this tract (amongst others) levied on, as lying in Fayette county, and sold to Alexander McLean, to whom a deed was duly executed and acknowledged, 4th May 1799. Alexander McLean and wife conveyed by deed to Andrew Stewart, 5th October 1824; and Andrew Stewart and wife sold and conveyed to these plaintiffs, 28th August 1854. By these deeds and proceedings, the title became vested in the plaintiffs, and they will be entitled to your verdict; unless the defendants have satisfied you that the land, at the time of the sale, lay in Somerset county, instead of Fayette,

[Hecker *et al. v.* Sterling *et al.*]

or that they have title by statute of limitations. The plaintiffs have introduced in evidence the records of the treasurer's office of Fayette county, showing that this land was sold for taxes in that county, and purchased by Stewart; but it is not necessary to advert to them.

"The recovery is resisted on two grounds: 1. That the land lay in Somerset county, and therefore no title passed by the judicial sales: 2. Adverse possession for twenty-one years.

"In 1773, an Act of Assembly was passed establishing a line between what was then Bedford and Westmoreland counties; and in 1795, when Somerset county was erected, the line of 1773 became its western boundary. The language of the act is as follows, viz.: 'That all and singular the lands lying within the province of Pennsylvania, and being within the boundaries following, that is to say, beginning in the province line, where the most westerly branch, commonly called the South or Great Branch of Youghiogheny river, crosses the same, then down the easterly side of the said branch and river to the Laurel Hill, thence along the ridge of said hill, north-eastward so far as it can be traced, or until it runs into the Allegheny hill.'

"By an Act of Assembly passed in 1844, two commissioners were appointed to run the line between the counties of Somerset and Fayette. The commissioners made a line in pursuance of the act, and it is said, that by this line the land in dispute is within Somerset county. In settling this part of the controversy between these parties, the jury must be governed by the line that existed at the time of the judicial sale. As far as we are informed, that was the one created by the Act of 1773, and if it embraced the land in Fayette county, the judicial sale was valid and conveyed a good title, no matter that afterwards the line was so changed as to throw the land into Somerset county. In our judgment, the line did not extend, by the act, down the stream to the centre of the main ridge of the mountain, but it was intended to go down to the mountain, thence up the first ridge into the main ridge of the hill; and if the jury, from the evidence, believe that a line thus run would place this land on the west or Fayette side, their verdict must be for the plaintiffs, unless the title was lost by the adverse holding of defendants and those under whom they claim.

"It is admitted, that the defendants are on this survey, and they claim to have title to it by statute of limitations. It is in evidence, that Moon went on the land in 1825, and remained there until his death, some eight or ten years ago, and that the possession has been kept up until the present land was cleared and cultivated, and houses erected. It does not clearly appear how far the improvements extended. If Moon had established his lines as an improver, and held up to these boundaries for twenty-one

years, the law would have protected him to that extent. But in this case, by the defendants' own showing, the lines of Moon's claim were not run and marked until fifteen years ago. If this is believed, the improver and those who hold his title can only hold that portion of the land which was cultivated and enclosed for twenty-one years.

"But the possession, as against the owners of the warrant, must not only have been adverse and hostile, but uninterrupted during the whole period. If the owner, or his agents, made an entry on the land under claim of right, such entry would toll the statute; and, to make out the case, the defendants and those under whom they claim, must have had the possession the requisite period, either before or after such entry. If you believe the evidence, Mr. Stewart had his agent on this land, running the boundaries in the year 1840, and the agent testified that whilst he and others were surveying the tract, Moon was in company during part of the time, and said that he held under Stewart, and that Stewart's title was good against the world. If this is believed, it was such an entry as tolled the statute. The improver held fifteen years before this entry, and seventeen years thereafter. But even if you believe that Moon, and those who hold his claim, have had the adverse and uninterrupted possession of part of the land for the statutory period, the defence cannot be sustained to that part, unless the defendants have furnished you with such evidence as will enable you to set it off to them. Very little evidence has been given as to the *extent* or *shape* of the improvements, and no draft thereof has been produced. We submit the questions of fact to the jury.

"Answer to the points submitted by the defendants' counsel.— We repeat again that in settling this question the jury must be governed by the line of 1773; if it differs from the one made in 1844. If, by the old line, the land lay in Somerset county, the judicial sale conveyed no title to the purchaser; but if in Fayette county, the proceedings were legal; and the subsequent change of the line, and consequent change of the position of the land, did not in the least affect the plaintiffs' title under the sale. John Hanna, one of the commissioners that ran the line in 1844, testified that they did not know of the existence of the Act of 1773, and were not governed by it, but that they made the line according to their own judgments, and that they occasionally varied their running to suit the wishes of persons residing along the route. Some of the witnesses say that the old line lay on the other side of the tract, whilst others are clear that it is a mile on this side. The surveyor that located the warrant returned it as lying in Fayette, where it was taxed from 1794. Mr. Colborn says that the residents on the land voted in this county. It is for the jury to determine the location of the land, from all the evi-

[Hecker *et al.* v. Sterling *et al.*]

dence in the case, and if it was in Fayette by the line of 1773, then the judicial proceedings gave a valid title to the purchaser; and if it was never divested, the plaintiffs must have your verdict. The only effect of the change, by the Act of 1844, is to justify the plaintiffs in bringing this action in this county instead of Fayette."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiffs, the defendants sued out this writ, and here assigned for error: 1. That the court erred in not instructing the jury, as a matter of law, that the ridge of the Laurel Hill was its highest point or crest: 2. That the court erred in submitting to the jury, as a matter of fact, where the line between the two counties was.

*Hugus* and *Baer*, for the plaintiffs in error.—It has been decided in Beale *v.* Patterson, 3 *W. & S.* 379, that no common usage or assent of the authorities of two counties can alter a legal dividing line, so as to affect title to land. If the doctrine was good in that case, much more should it prevail here, when usage and common understanding for the last seventy years, before the county of Somerset was organized, assert, with one voice, that this land was never within the limits of Fayette county. All the witnesses agree, that if the summit of Laurel Hill is the boundary mentioned in the Acts of Assembly between the two counties, then this land must be not less than one mile east of the county line, and within the county of Somerset. Such being the case, the title of the plaintiffs, being derived from sheriff's and treasurer's sales in the county of Fayette, is of no value, as every act done by these officers was beyond their jurisdiction. Should the position of the plaintiffs below be correct, that this land was in the county of Fayette at the time these sales took place, upon which their title is founded, then the land is yet in the county of Fayette; for all the evidence shows that the line has never been changed.

*Forward & Gaither*, for the defendants in error.—There was conflicting evidence as to the line dividing the two counties, which could only be settled by the jury, to whom it was properly referred.

From 1773 to 1844, there was no line between these counties marked on the ground, and within that time the Commonwealth granted this land as situate in Fayette county; and that title is vested in the plaintiffs below by sales made by the sheriffs and treasurers of that county. Neither the Commonwealth nor any one claiming under her, is objecting to the regularity of these proceedings. The defendants below claimed under one, who, it was admitted, was a mere trespasser: Troutman *v.* May, 9 *Casey* 460. Even if this survey was made out of the proper district of the sur-

veyor, it is now binding and valid : Wright *v.* Wells, 1 *Yeates* 286 ; Harris *v.* Monks, 2 *S. & R.* 560 ; Creek *v.* Moon, 7 *Id.* 331 ; Goddard *v.* Gloninger, 5 *Watts* 220 ; Vastbinder *v.* Wager, 6 *Barr* 346.

The opinion of the court was delivered by

LOWRIE, C. J.—The objection to the charge of the court is, that it does not define the line "along the ridge of the said hill" as meaning, along its crest or highest part; and that it left the location of the county line to the jury. But however the court might have defined the line, we do not see how they could have avoided leaving to the jury the application of the definition to the ground. The definition of county lines is of course matter of public law, and as such must be interpreted by the court; but the jury alone can find the facts that give it a practical application in actions of ejectment for the trial of private rights.

It is quite manifest, that the meaning of the law fixing the line was long in doubt ; and we cannot say, that the court was bound to give it an interpretation derived from its language alone, and without any reference to the actual public interpretation which it had received during three-quarters of a century. We cannot say, under the evidence, that the court put an erroneous interpretation on it. Long-established public regulations ought not to be disturbed by logical or philological criticisms of original principles. The county line ought to be recognised as being where it was generally understood to be, and not where we would now place it, if we had now to apply the law for the first time. We can best ascertain where the true line was, by looking to the public practice relative to it, in connexion with the levying of taxes, selecting jurors, serving process by sheriffs and constables, elections, official surveys, and such like matters. More of such evidence would have been better here.

Judgment affirmed.